SUPERIOR COURT OF WASHINGTON FOR KING COUNTY

| | |
|---|---|
| OLYMPIA OFFICE, LLC, a New York limited liability company; WA PORTFOLIO, LLC, a Delaware limited liability company; MARINERS PORTFOLIO, LLC, a Virginia limited liability company; and SEAHAWK PORTFOLIO, LLC, a Florida limited liability company,<br><br>Plaintiffs,<br><br>v.<br><br>MLMT 2005-MCP1 WASHINGTON OFFICE PROPERTIES, LLC, a Washington limited liability company; MIDLAND LOAN SERVICES, a division of PNC BANK, N.A.; RAINIER FORECLOSURE SERVICES, INC., a Washington corporation; JSH PROPERTIES, INC., a Washington corporation,<br><br>Defendants. | NO. 17-2-31354-8 SEA<br><br>PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION RESTRAINING TRUSTEE'S SALES<br><br>**To Be Heard in Accordance with Order to Show Cause Entered on December 6, 2017** |

## I. RELIEF REQUESTED

Plaintiffs Olympia Office LLC ("Olympia"), WA Portfolio LLC ("WA"), Mariners Portfolio LLC ("Mariners") and Seahawk Portfolio LLC ("Seahawk"), (collectively, the "Property Owners" or "Plaintiffs")), request that the Court enter a preliminary injunction that restrains and enjoins defendants and defendants' agents, servants, employees, and all persons in active concert or participation with defendants, from conducting a trustee's sale in

PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION
RESTRAINING TRUSTEE'S SALES - 1

Williams, Kastner & Gibbs PLLC
601 Union Street, Suite 4100
Seattle, Washington 98101-2380
(206) 628-6600

6263935.1

# EXHIBIT A

Case 17-04120-BDL    Doc 5-1    Filed 12/12/17    Ent. 12/12/17 13:51:59    Pg. 1 of 15

foreclosure of any deeds of trust purportedly encumbering eight commercial real properties within the state of Washington. Trustee's sales of these eight properties, which are valued at up to $42 million, are scheduled to occur on December 15, 2017 in King, Thurston, and Chelan counties. The Court should restrain these potential sales based upon the absence of any default, defendants' gross mismanagement of funds, and need for an accurate accounting.

The Property Owners bring this action following the dismissal of a Chapter 11 Bankruptcy in New York on October 31, 2017. In that case, following two days of evidentiary hearings and thousands of pages of submissions, the United States Bankruptcy Court Judge specifically found that the defendants lenders could not prove the alleged loan default:

> The loan history and the record before this Court gave no clear answer as to the profit made from which the Note A and/or Note B should have been accelerated or, in fact, the dates from which they were actually accelerated, while the third parties as follows: Exhibits 111 and 112 constitute *the loan histories of the A note and the B note*, and they *do not demonstrate that the notes had been treated as being in default as early as the noteholder now asserts* …[1]

The Property Owners are entitled an accurate statement of the amount owed by which they can cure the default, if it even exists. This Court should enjoin the pending trustee's sales and allow the orderly presentation of evidence as to the debt in order to provide the Property Owners with the opportunity to cure any default and avoid the unjust theft of unquestionable equity in the properties.

II. STATEMENT OF FACTS[2]

A. Bankruptcy Background

On February 10, 2011, borrower CDC Properties I LLC (the "Original Borrower" or

---

[1] Court's September 29, 2017 ruling, attached as Exhibit 5 (lines 10-17) to the Declaration of Scott Switzer ("Switzer Decl.").

[2] A more detailed recitation of the facts underlying this lengthy dispute is found in the Switzer Decl., which recounts the prior bankruptcy proceedings as well as the acquisition of the property.

PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION RESTRAINING TRUSTEE'S SALES - 2

**Williams, Kastner & Gibbs PLLC**
601 Union Street, Suite 4100
Seattle, Washington 98101-2380
(206) 628-6600

6263935.1

"CDC") filed a voluntary petition for reorganization pursuant to Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Western District of Washington (Case No. 11-41010; the "CDC Bankruptcy Case"). On February 21, 2012, the CDC Bankruptcy Case was closed. This bankruptcy was reopened this year and motions are currently pending. Neither the Property Owners nor the properties are neither parties in nor subject to the CDC Bankruptcy Case.

On August 15, 2014, Prium Companies, LLC ("Prium") also filed a voluntary Chapter 11 petition in the Washington Bankruptcy Court (case number 14-44512; the "Prium Bankruptcy Case"). Prium is the sole member of CDC Acquisition Company I, LLC, a Delaware limited liability company. CDC Acquisition Company I, LLC is the sole member of CDC.

By Orders dated October 2, 2014 and February 26, 2015 in the Prium Bankruptcy Case, Eric D. Orse ("Orse") was appointed as the management representative of, among other entities, Prium and CDC. In May 2016, the lender predecessors to the Noteholders commenced an action to appoint a custodial receiver for the Properties. Pursuant to an Order Appointing Custodial Receiver dated May 19, 2016, defendant herein, JSH Properties, Inc. (the "Receiver" or "JSH"), was appointed as custodial receiver over the Properties while they remained owned by the Original Borrower.

On September 23, 2016 the Property Owners collectively purchased from the Original Borrower, acting through Orse, the following real properties at issue: (i) 5000 Capital Boulevard Southeast, Tumwater, WA 98502; (ii) 640 Woodland Square Loop Southeast, Lacey, WA 98503; (iii) 637 Woodland Square Loop Southeast, Lacey, WA 98503; (iv) 629 Woodland Square Loop Southeast, Lacey, WA 98503; (v) 4565 7th Avenue Southeast, Lacey, WA 98503; (vi) 645 Woodland Square Loop Southeast, Lacey, WA 98503; (vii) 805 South Mission Street, Wenatchee, WA 98801; (viii) 8830 25th Avenue Southwest, Seattle, WA

PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION RESTRAINING TRUSTEE'S SALES - 3

**Williams, Kastner & Gibbs PLLC**
601 Union Street, Suite 4100
Seattle, Washington 98101-2380
(206) 628-6600

6263935.1

Case 17-04120-BDL    Doc 5-1    Filed 12/12/17    Ent. 12/12/17 13:51:59    Pg. 3 of 15

98106; and (ix) 1620 South Pioneer Way, Moses Lake, WA 98837 (collectively, the "Properties"), the sale was evidenced by deeds of the same date (the "Deeds").

Defendants allege that they possess a security interest in the Properties based upon deed(s) of trust securing two promissory notes dated September 29, 2004. The first promissory note was originally payable to Merrill Lynch Mortgage Lending, Inc. (the "Original Lender") in the original principal amount of $40,700,000.00 (the "A-Note"). The second promissory note was originally payable to the Original Lender in the original principal balance of $2,557,500.00 (the "B-Note", and together with the A-Note, the "Notes").

On or about September 30, 2005, the Original Lender purportedly assigned the A-Note to Wells Fargo Bank N.A., as Trustee for the Registered Holders of Merrill Lynch Mortgage Trust 2005-MCP1 Commercial Pass-Through Certificates, Series 2005-MCP1 and the B-Note to U.S. Bank, N.A., as Successor-Trustee to LaSalle Bank N.A., as Trustee for the benefit of the Certificate Holders of Commercial Mortgage Pass-Through Certificates, Series MCCMT 2004-C2D. Then, on or about October 18, 2016, Wells Fargo and U.S. Bank purportedly assigned the Notes to the Noteholder, defendant MLMT. Midland Loan Services, a division of PNC Bank, N.A. ("Midland") serves as both the master servicer and special servicer for the Notes.

Midland had scheduled a foreclosure sale for October 21, 2016, which was after Plaintiffs' purchase of the Properties and it refused to negotiate with Plaintiffs to resolve any outstanding issues or to provide any proper accounting. As a last resort Plaintiffs were forced to file bankruptcy in an attempt to get finality on what was actually owed on the debt and set forth a plan to pay it. Accordingly, on October 20, 2016 (the "Olympia Petition Date"), Olympia filed a voluntary Chapter 11 petition in the United States Bankruptcy Court for the Eastern District of New York (the "New York Bankruptcy"). Additionally on November 28, 2016 (the "Subsequent Petition Date"), Plaintiffs WA, Mariners, and Seahawk each filed

PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION
RESTRAINING TRUSTEE'S SALES - 4

**Williams, Kastner & Gibbs PLLC**
601 Union Street, Suite 4100
Seattle, Washington 98101-2380
(206) 628-6600

6263935.1

Case 17-04120-BDL    Doc 5-1    Filed 12/12/17    Ent. 12/12/17 13:51:59    Pg. 4 of 15

voluntary petitions for reorganization under Chapter 11 in that court. The Property Owerns' bankruptcies were then consolidated for procedural purposes.

B. <u>The Claimed Debt</u>

According to the recorded Notice of Trustee's Sale issued against the Properties, the amount of debt claimed by the Noteholder is now $46,613,166.93. The Property Owners have consistently disputed the basis of this debt, the timing of the default and the calculations, and whether any default exists at all. In fact, as explained in the section below, a report prepared by defendant MLMT itself, known as the Bondholder Report, contradicts defendants' contention and instead establishes that the total amount owed is <u>millions of dollars less than</u> the claimed $46,613,166.93.

C. <u>The Bondholder Report</u>

The A-Note is identified as "Loan 8" (Loan Number 30243254) in the bond pool report prepared by defendant Merrill Lynch Mortgage Trust 2005-MCP1, entitled "Distribution Date Statement" (the "Bondholder Report"). This is a critical document filed pursuant to SEC regulations that reflects the amounts owed to the secured creditor. The NY Bankruptcy Court properly found that the Bondholder Report was admissible evidence of the debt.[3] A review of the Bondholder Report shows that the bondholders are owed substantially less than the amount represented in the Notices of Trustee Sale.

Indeed, the Bondholder Report reveals the Noteholder is only owed ***$28,988,549.65*** on the A-Note (see the "Actual Principal Balance," as identified in the Bondholder Report).[4] More importantly, the Bondholder Report does not reveal default interest at all, instead showing only principal and servicer fees – indicating the debts are not actually in default as far

---

[3] Ex. 3, Switzer Declaration.

[4] Ex. 2, Switzer Declaration.

PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION
RESTRAINING TRUSTEE'S SALES - 5

**Williams, Kastner & Gibbs PLLC**
601 Union Street, Suite 4100
Seattle, Washington 98101-2380
(206) 628-6600

6263935.1

as the Bondholder is concerned. Payment records dated as recently as 2016 reveal that interest and principle payments are being made on the debt.

In other words, defendants' SEC regulated disclosure reports confirm to the bondholders that the outstanding debt is only $30,556,353.60 and current, while, at the same time, defendants' foreclosure notices misrepresent the debt to be in excess of $46 million. The debt service payment reported is only ***$229,814.95*** and is being paid monthly. The Properties cash flow, discussed below, sufficiently to service this debt. Similarly, the not publically available Bondholder Report disclosed in prior discovery reveals that the unpaid loan balance for the B-Note is only $2,519,842.99 not the $4,602,959.73 misrepresented and reveals the same interest rate as the original note, not default rates. Therefore, the debt service payment for Note B is only ***$27,792.18***. Total monthly payments on both Notes are ***$257,607.13***. Again, the Properties cash flow sufficient funds to service these debts, and the debt service is being paid monthly.

D.  The Properties are Valuable

The Properties are primarily occupied by blue chip government tenants at a high occupancy rate, with only one property currently vacant. The Properties generate income in excess of $350,000 per month, but despite the closure of the receivership[5] and the NY Bankruptcy, JSH purports to remain in control of the Properties operations and revenues to this day and refuses to provide reports or take any instruction from the Property Owners. The Property Owners have retained Kidder Mathews to market the properties and they have provided appraisal reports detailing the value of the Properties.[6] Currently, Kidder Mathews intends to market the properties for approximately $46 million in total – satisfying even the

---

[5] Once the Properties were sold to the Plaintiffs the state court receivership of CDC and its assets had no more force or effect on the Properties owned by the Plaintiffs.

[6] Switzer Decl., ¶38. Declaration of David M. Chudzik, Ph.D, Exs. A-H.

PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION RESTRAINING TRUSTEE'S SALES - 6

**Williams, Kastner & Gibbs PLLC**
601 Union Street, Suite 4100
Seattle, Washington 98101-2380
(206) 628-6600

6263935.1

Case 17-04120-BDL    Doc 5-1    Filed 12/12/17    Ent. 12/12/17 13:51:59    Pg. 6 of 15

unsupported and overstated debt listed on the Notice of Trustee's Sale.[7] Even defendant Midland's own documents demonstrate that the Properties have significant value. Its report prepared one year ago in October 2016 indicates an "as-stabilized" value of $39.5 million.[8] This is well in excess of the debt listed on the bondholders report. Obviously, that value has only increased in the intervening year.

Without intervention of this Court, the Defendants will successfully strip approximately $8,980,000 of Plaintiffs' equity.

## III. EVIDENCE RELIED UPON

Plaintiffs rely on the complaint filed in this action, the Declaration of Scott Switzer, Declaration of David Chudzik, Ph.D. and exhibits thereto, as well as the documents on file with this Court.

## IV. ARGUMENT

A. Legal Standard

1. Standard for Preliminary Injunction

Under Washington's Deed of Trust Act, a person possessing an interest in real property may apply for an injunction restraining a trustee's sale "on any proper ground." RCW 61.24.130(1). An applicant for an injunction must show: "(1) that he has a clear legal or equitable right, (2) that he has a well-grounded fear of immediate invasion of that right, and (3) that the acts complained of are either resulting in or will result in actual and substantial injury to him." *Kucera v. State Dep't of Transp.*, 140 Wn.2d 200, 209 (2000); *Tyler Pipe Indus., Inc. v. Department of Revenue*, 96 Wn.2d 785, 792 (1982) (quoting *Port of Seattle v. Int'l Longshoremen's & Warehousemen's Union*, 52 Wn.2d 317, 319 (1958)). The elements must

---

[7] *Id.*

[8] Ex. 9, Switzer Decl.

PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION RESTRAINING TRUSTEE'S SALES - 7

**Williams, Kastner & Gibbs PLLC**
601 Union Street, Suite 4100
Seattle, Washington 98101-2380
(206) 628-6600

6263935.1

Case 17-04120-BDL    Doc 5-1    Filed 12/12/17    Ent. 12/12/17 13:51:59    Pg. 7 of 15

be examined in light of equity, including a balancing of the "relative interests of the parties." *Id*. Each element is satisfied here as set forth below.

    2.    <u>The Property Owners Have a Clear Legal Right That Will Be Infringed by the Sale of the Property</u>

The Property Owners are the record owners of the Properties and, as such, they possess clear legal ownership rights in and to the Properties. They have rights to possess and retain the Properties free from unlawful foreclosure. Moreover, the Property Owners have the right to a substantiated accounting of the amounts actually due and payable under the Notes in order to obtain a legitimate opportunity to cure and/or to realize the significant equity in the Properties. *See e.g. Afewerki v. Anaya Law Grp.*, 868 F.3d 771, 777 (9th Cir. 2017) (finding a $3,000 overstatement of the debt material in the debt collection context). Lastly, with the wrongful interference of the prior receiver, the Property Owners are not sure how much money has been generated by the Properties as of late and where such money has gone, although it is presumed that such sums have been paid to Noteholders in partial satisfaction of the debt.

In fact, just this week, in the CDC Bankruptcy (pending in Washington and recently reopened) a third-party filed a motion with supporting declarations and evidence that clearly demonstrates the Noteholder and Midland did not properly account for the debt and improperly manufactured its default. The motion which seeks to establish that, among other things, the Noteholder and its predecessors incorrectly caused the purported default, is set for hearing on January 10, 2017 in the United States Bankruptcy Court for the Western District of Washington, No. 11-41010-BDL. The evidence cited in that motion establishes that at the time of the purported default, there were ample funds to satisfy the debt service at issue.[9] The purportedly unpaid amount owed on the B Note that month, causing the alleged default was only $27,792.18, and the amount available in the account was $300,633.52 – ***or nearly eleven***

---

[9] Ex. 10, Switzer Declaration.

PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION RESTRAINING TRUSTEE'S SALES - 8

**Williams, Kastner & Gibbs PLLC**
601 Union Street, Suite 4100
Seattle, Washington 98101-2380
(206) 628-6600

6263935.1

*times the amount of the required payment*. Yet the Noteholder and Midland failed to apply those proceeds to the debt, thus inventing the default today.

    3.    <u>The Property Owners have a Well-Grounded Fear of Invasion of Their Rights Based on the Scheduled Trustee's Sales</u>

Trustee's sales of all eight properties are currently scheduled for December 15, 2017. Midland and the Noteholders have repeatedly demonstrated their willingness to falsify and manipulate, for their own benefit, the debt purportedly secured by the Properties. Their goal is simple: wrestle the Properties away from the Property Owners and then reap the substantial equity in the Properties – approximately $8,980,000 *more* than the loan balance. This is the Property Owners' equity in the property. Thus, the Property Owners have a well-grounded fear of further immediate harm. Property Owners' ownership rights in the Properties will be invaded unless the Court restrains the sales.

    4.    <u>Property Owners will Continue to Suffer Actual and Substantial Injury from Defendants Misconduct</u>

Unless this Court intervenes, Property Owners' rights will be invaded and they will suffer further actual and substantial injury. Thus far, Property Owners have suffered actual and substantial injury from the (1) misstatement of the debt that defendants contend is secured by the Properties, (2) self-dealing of the agents of the Noteholder and loan servicer, and (3) mismanagement of the income from the Properties purportedly causing a default under the obligation. These harms are continuing in nature. The Noteholder, loan servicer, and their agents have so substantially interfered with and muddied the waters of the debt owed that a United States Bankruptcy Judge was not convinced the Defendants were seeking to recover the correct amounts even after evidentiary hearings. The Defendants now try to use that same uncertain debt and contrived default to sell the properties out from under the Property Owners to their substantial injury. This Court must intervene.

    5.    <u>In Washington Restraining a Foreclosure Sale Does Not Require a Showing of a "likelihood of success" as is Typical For a Preliminary Injunction Under CR 65</u>

PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION
RESTRAINING TRUSTEE'S SALES - 9

**Williams, Kastner & Gibbs PLLC**
601 Union Street, Suite 4100
Seattle, Washington 98101-2380
(206) 628-6600

6263935.1

The Washington Supreme Court "has frequently emphasized that the Deed of Trust Act 'must be construed in favor of borrowers because of the relative ease with which lenders can forfeit borrowers' interests and the lack of judicial oversight in conducting nonjudicial foreclosure sales.'" *Klem v. Wash. Mut. Bank*, 176 Wn.2d 771, 789 (2013) (*quoting Udall v. T.D. Escrow Servs., Inc.*, 159 Wn.2d 903, 915–16 (2007)). This is true in part because "[t]rustees have considerable financial incentive to keep those appointing them happy and very little financial incentive to show the homeowners the same solicitude." *Klem*, 176 Wn.2d at 789. "'Anyone having any objection to the sale on any grounds whatsoever will be afforded an opportunity to be heard as to those objections if they bring a lawsuit to restrain the sale pursuant to RCW 61.24.130.'" *Id.* (quoting RCW 61.24.040(1)(f)).

"[T]he legislature provided property owners in default with an opportunity to prevent the loss of their [property], if only temporarily, ***without needing to first marshal sufficient evidence to show a likelihood of prevailing on the merits***. *Davis v. Blackstone Corp.*, 186 Wn. App. 1009 (2015) (unpublished, yet persuasive authority *directly on point*) (emphasis added). Expressly contained within the "broad scope" of non-exclusive list of legal and equitable grounds are "defenses to the default(s) such as payments having been made, lender liability issues, fraud, usury, violation of truth in lending and consumer protection laws." *Davis v. Blackstone Corp.*, 186 Wash. App. 1009 (2015) (*citing Vawter v. Quality Loan Serv. Corp. of Wash.*, 707 F.Supp.2d 1115, 1122 (W.D .Wash.2010)) (quoting 27 Marjorie Dick Rombauer, Washington Practice: Creditors' Remedies—Debtors' Relief § 3.62 (2008)).

Where the plaintiff raised the defense of usury, the *Davis* Court concluded the trial court erred when it failed to enjoin the sale:

> It is understandable that, in the absence of precedent interpreting RCW 61.24.130(1), the trial judge turned to the familiar CR 65 standard. Nevertheless, the court erred in so doing. The accommodating language used by the legislature in the DTA—"any proper legal or equitable ground"—is at odds with the CR 65 requirement of showing a likelihood of prevailing on the merits.

PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION
RESTRAINING TRUSTEE'S SALES - 10

**Williams, Kastner & Gibbs PLLC**
601 Union Street, Suite 4100
Seattle, Washington 98101-2380
(206) 628-6600

6263935.1

Case 17-04120-BDL    Doc 5-1    Filed 12/12/17    Ent. 12/12/17 13:51:59    Pg. 10 of 15

*Davis v. Blackstone Corp.*, 186 Wash. App. 1009, at *4. Ultimately, the Washington Court of Appeals held: "[Plaintiff] was not required to show a likelihood of prevailing on the merits but, rather, *merely had to assert any proper legal or equitable ground to obtain an order restraining the sale.*" *Id.*, at *5 (emphasis added).

Here the Property Owners have properly and sufficiently raised the issues regarding the claimed default, including the misstatement of the debt, mismanagement resulting in default, mismanagement of the funds received from the properties, and substantial discrepancies regarding the imposition of default interest. Under the "broad scope" of the Deed of Trust Act, the identified misconduct and infirmities identified are proper grounds for restraint of the sale.

In fact, even if likelihood of success was a requirement, the findings of the NY Bankruptcy Court establish conclusively that the Noteholder's statement of the debt and statement of default is absolutely flawed:

> 14 … Exhibits 111 and 112 constitute *the*
> 15 *loan histories of the A note and the B note*, and they *do not*
> 16 *demonstrate that the notes had been treated as being in default*
> 17 *as early as the noteholder now asserts* …[10]
>
> ***
>
> 13 … *The noteholder has consistently asserted that*
> 14 *the B note went into default in July of 2013 causing a cross-*
> 15 *default under the A note.* But based on Exhibit HH, *it is*
> 16 *unclear how the noteholder came to that conclusion.*[11]
>
> ***
>
> 2…*There's no*
> 3 *indication that the accrual of default interest in Exhibit 111*
> 4 *from a date nearly as early as July of 2013 or even to May of*
> 5 *2014.*
> 6 Similarly, the B notes paid history of Exhibit 112
> 7 indicates that CDC plan payments were being made through the
> 8 May 2014 principal with interest through the May 2014 payment.
> 9 *And, again, principal is decreasing after each payment was*

---

[10] Court's September 29, 2017 ruling, Ex. 5, Switzer Decl.

[11] *Id.*

PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION
RESTRAINING TRUSTEE'S SALES - 11

**Williams, Kastner & Gibbs PLLC**
601 Union Street, Suite 4100
Seattle, Washington 98101-2380
(206) 628-6600

6263935.1

> *made, indicating that default interest on the B note was not charged prior to May of 2014.[12]*

The Noteholders have neither adjusted their default findings, nor their calculations of interest despite wholly failing to prove, after evidentiary hearings, that the default was appropriate. Property Owners will almost certainly demonstrate the stated debt is incorrect.

6. <u>The Balance of Hardships weighs in favor of Property Owners</u>

Property Owners are seeking a preliminary injunction until this Court reaches a determination on the merits. This will create minimal hardship for the Defendants compared to the alternative hardship to the Property Owners. If the sales were to proceed, it could be too late (and/or extremely costly) to "unring the bell" and unwind the sales, even if the Property Owners were to successfully prove that the defendants failed to satisfy the statutory requisites to the sales or lacked the right to foreclose at all. Furthermore, any economic interests of the Defendants continue in full until resolved otherwise in this action. The Properties are largely occupied and generating substantial monthly revenue which is more than sufficient to pay the principle and interest payments required. Even at the grossly overstated debt of approximately $46 million Defendants' are secured in the value of the Properties. Further Property Owners have submitted substantial evidence of the value of the Properties, including full appraisals with this filing. Ultimately, a sale of the properties will generate sufficient proceeds to retire the debt.

By contrast, if this Court does not issue an order preventing the non-judicial foreclosure sales Property Owners will be deprived of the full value of their ownership interests in the Properties.

---

[12] *Id.*

PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION RESTRAINING TRUSTEE'S SALES - 12

**Williams, Kastner & Gibbs PLLC**
601 Union Street, Suite 4100
Seattle, Washington 98101-2380
(206) 628-6600

6263935.1

B. <u>Property Owners Should Not Be Required to Post Additional Security Until After an Accounting is Completed</u>

Although CR 65(c) requires security in an amount the "[C]ourt deems proper" to protect restrained parties from wrongful injunction, no security is proper or necessary in this case because (1) Property Owners seek only to delay sale while an accurate accounting of the debt is established and (2) appoint a new third-party property manager to manage the Properties as selected by the Property Owners for the benefit of all parties with an interest in the Properties..

Here, because the Noteholder has been and is currently receiving principle and interest payments, on a monthly basis, no further security should be required as that satisfies the statutory requirements. Noteholders are fully secured and will not suffer any damages if it is enjoined from immediately selling the Properties, especially where the Properties are generating substantial monthly revenue. Alternatively, if this Court does elect to set security, it should direct that the funds generated by rents on the Properties, but held and controlled by the JSH, seemingly at the behest and under control of Midland, at the rate of approximately $350,000 per month, be used to pay debt service at the non-default rate while this action is pending. Property Owners know that as last as September 13, 2017, the purported receiver, defendant JHS, held in excess of $1,032,695.37 and that that amount would cover the required monthly debt service for multiple months alone, even without replenishment from ongoing rental amounts on the Properties. Further, the total deposits for the month of August total $370,869.62.[13]

C. <u>Property Owners Have Complied With the Notice Requirement of RCW 61.24.130(2)</u>

"No court may grant a restraining order or injunction to restrain a trustee's sale unless the person seeking the restraint gives five days' notice to the trustee of the time when, place

---

[13] Switzer Decl., Ex. 6.

PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION RESTRAINING TRUSTEE'S SALES - 13

**Williams, Kastner & Gibbs PLLC**
601 Union Street, Suite 4100
Seattle, Washington 98101-2380
(206) 628-6600

6263935.1

1 where, and the judge before whom the application for the restraining order or injunction is to
2 be made." RCW 61.24.130(2). "No judge may act upon such application unless it is
3 accompanied by proof, evidenced by return of a sheriff, the sheriff's deputy, or by any person
4 eighteen years of age or over who is competent to be a witness, that the notice has been served
5 on the trustee." *Id.*

Counsel for Property Owners are serving copies of this motion and all supporting materials upon the trustee, defendant Rainier foreclosure Services, Inc., on Wednesday, December 6, 2017, seven days prior to the hearing date (five court days) and ten days before the December 15 trustee's sale date. Proof of service will be filed in conjunction with this motion. The instant motion states the time when, place where, and the judge before whom the application for the restraining order or injunction is to be made.

## V. PROPOSED PRELIMINARY INJUNCTION

Property Owners request that, at the hearing on December 13, 2017, at 8:30 a.m., the Court enter their proposed preliminary injunction restraining trustee's sale, a copy of which is attached hereto.

## VI. CONCLUSION

For the reasons enumerated herein, the Court should issue a preliminary injunction barring defendants and defendants' agents, servants, employees, and all persons in active concert or participation with defendants, from conducting a trustee's sale at any time during the pendency of this action.

PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION
RESTRAINING TRUSTEE'S SALES - 14

**Williams, Kastner & Gibbs PLLC**
601 Union Street, Suite 4100
Seattle, Washington 98101-2380
(206) 628-6600

6263935.1

Case 17-04120-BDL    Doc 5-1    Filed 12/12/17    Ent. 12/12/17 13:51:59    Pg. 14 of 15

DATED this 6th day of December, 2017.

                    s/Daniel A. Brown
                    Daniel A. Brown, WSBA #22028
                    Daniel J. Velloth, WSBA #44379
                    Attorneys for Plaintiffs OLYMPIA OFFICE, LLC; WA PORTFOLIO, LLC; MARINERS PORTFOLIO, LLC; and SEAHAWK PORTFOLIO, LLC
                    WILLIAMS, KASTNER & GIBBS PLLC
                    601 Union Street, Suite 4100
                    Seattle, WA 98101-2380
                    Telephone: (206) 628-6600
                    Fax: (206) 628-6611
                    dbrown@williamskastner.com
                    dvelloth@williamskastner.com

                        I certify that this memorandum contains fewer than **4,065** words in compliance with the Local Civil Rules.

PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION RESTRAINING TRUSTEE'S SALES - 15

**Williams, Kastner & Gibbs PLLC**
601 Union Street, Suite 4100
Seattle, Washington 98101-2380
(206) 628-6600

6263935.1

Case 17-04120-BDL    Doc 5-1    Filed 12/12/17    Ent. 12/12/17 13:51:59    Pg. 15 of 15